# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| LUCIA KU GONZALEZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. 24-CV-333 |
| v. | ) | |
| | ) | |
| COCA-COLA BOTTLING COMPANY | ) | |
| UNITED, INC. | ) | JURY DEMAND |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

**COMES** the Plaintiff, Lucia Ku Gonzlez ("Ms. Gonzalez") by and through undersigned counsel, and for her cause of action against the Defendant, Coca-Cola Bottling Company United, Inc. ("Defendant"), would respectfully show unto the Court as follows:

### I. JURISDICTIONAL STATEMENT

1. The jurisdiction of this Court is invoked by Ms. Gonzalez pursuant to the Tennessee Human Rights Act ("THRA"), T.C.A. § 4-21-101 *et seq.* providing for injunctive and other relief against discrimination in employment. This action also seeks to remedy violations of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*. and the Tennessee Disability Act, T.C.A. 50-1-503. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. Supplemental jurisdiction over Ms. Gonzalezs' state law claims is pursuant to 28 U.S.C. §1367.

### II. NATURE OF PROCEEDING

2. This is a proceeding for compensatory damages, damages for mental anguish, abuse, embarrassment and humiliation, and for such additional damages and attorney's fees as

may be necessary to effectuate the purposes of the THRA.  Ms. Gonzalez also seeks damages against Defendants for violation of the FMLA and the Tennessee Disability Act.

3.     At all times material hereto, Ms. Gonzalez was a citizen and resident of Hamilton County, Tennessee and was employed by Defendant in Chattanooga, Tennessee.

4.     Defendant provides security services in Hamilton County, Tennessee. Defendant's business is sufficient to classify Defendant as an employer within the meaning of the THRA, T.C.A. § 4-21-102(5), the FMLA, 29 C.F.R. § 825.104,  and the Tennessee Disability Act, T.C.A. § 8-50-103.

### III.    FACTS

5.     Ms. Gonzalez, of Hispanic race and origin, was employed by Defendant from December 29, 2020 until her wrongful termination on October 11, 2023. She was hired as a Machine Operator 1. Ms. Gonzalez made it known to management that career advancement within the company was very important to her.

6.     Ms. Gonzalez had an excellent work record with no disciplinary action.  She had no significant work issues until she began complaining in January, 2022 that she was not being promoted to a Machine Operator 2 position when other Caucasian and male workers, who were less qualified and had been employed less time, were being promoted to the position.   Her supervisor said they were short staffed but that she would receive the training.  After many months of no training, Ms. Gonzalez continued to question her supervisors why other Caucasian and male employees who had been employed less time were being trained and promoted over her.  Ms. Gonzalez continued to inquire about the position but was ignored.

7.     In July, 2022, Ms. Gonzalez filed a charge of race and gender discrimination with the EEOC.  Ms. Gonzalez complained to the plant manager about the discrimination the first week

of January, 2023.  The plant manager told Ms. Gonzalez that he would investigate and get back with her, but he did not.  She continued to complain to her supervisor who finally stated that he would begin her training on January 9 and 10 for the Machine Operator 2 position.  Ms. Gonzalez received training on January 9th but not January 10.  She checked the schedule for the following week and again was not scheduled for training.  Shortly thereafter, Ms. Gonzalez was called to the office by her supervisor and HR to discuss her training.  Her supervisor stated that he would have a meeting with the other supervisors so that she could continue her training but that did not happen.

8. Following her continued complaints about the lack of training, Ms. Gonzalez noticed that her supervisors' attitude towards her became increasingly hostile. On one occasion, Ms. Gonzalez called on the radio to get someone to relieve her so she could use the restroom.  Her supervisors ignored her calls and as a result Ms. Gonzalez urinated on herself.  She reported this to her previous manager who said he would talk to her direct supervisors about the incident and instructed her to stop the machine and go to the restroom if it happened again.  This continued to happen so Ms. Gonzalez stopped her machine and went to the restroom if her supervisors did not respond to her calls for help. When this occurred, her supervisors would yell at her.  Ms. Gonzalez continued to ask about her training and being promoted to Machine Operator 2 but her requests were ignored.

9. Ms. Gonzalez began experiencing anxiety and depression as she watched Caucasian and male employees being trained and promoted over her.  She became so physically ill and overcome with insomnia, anxiety and depression that she had to seek medical attention and was referred to a psychologist for treatment and medication.  As a result, she  had to take FMLA leave.  When she returned to work, Ms. Gonzalez continued to request the training that was necessary for her to be promoted to Machine Operator 2.  If she was scheduled for the training, it

3

would be abruptly canceled, and she would be sent back to her old machine. She became increasingly depressed and was often tearful at work. When she contacted one of the higher-level managers, she was told that she was not being trained due to the time she had missed from work. Ms. Gonzalez explained that her absences were due to FMLA approved time off.

10. Ms. Gonzalez was finally promoted to the Machine Operator 2 position on March 13, 2023. However, since management had refused to provide her with the necessary training for the position, she was not able to properly operate the machine. Ms. Gonzalez was told that she would have to learn the machine on her own and would not be given training. Management also continued to harass her. As a result, Ms. Gonzalez had to go back on medical leave on April 6, 2023. When she was released to return to work in May, 2023, she was scheduled to take a drug test on May 22, 2023, but was reprimanded for being late due to the drug test. Ms. Gonzalez became so distraught over the continued harassment that on May 26, 2023, she had to go back on medical leave.

11. On June 27, 2023, Ms. Gonzalez's physician prepared a note releasing her to return to work on September 25, 2023. On July 5, 2023, Ms. Gonzalez sent a text to Shelly Collins, Employee Relations Manager, notifying her that she would be released to return to work on September 25, 2023. Ms. Gonzalez also sent a screen shot of the doctor's release to Ms. Collins.

12. On July 17, 2023, Ms. Collins sent a letter to Ms. Gonzalez stating that "On 5/26/23 you began Family Medical Leave for your own serious health condition. Under the Family Medical Leave Act, you are allowed up to 12 weeks of leave for qualified serious health conditions. As of 7/15/2023 you will have used your full 12 weeks." Ms. Collins further stated, "Please let me know if you intend to return to work when your FMLA leave expires." Ms. Collins also stated, "If you are unable to work, you can remain on medical leave for another 3 months if you qualify

4

for short term disability insurance." Ms. Collins stated that if she did not hear from Ms. Gonzalez, she would be terminated on July 29, 2023.

13. Ms. Gonzalez applied for short term disability and was approved on July 28, 2023 for benefits through August 28, 2023. On September 12, 2023, Ms. Gonzalez received a letter extending her short-term disability to September 25, 2023. Ms. Gonzalez sent a text to Ms. Collins with a screenshot of the letter approving her short-term disability. On September 12, 2023, Ms. Collins sent a letter to Ms. Gonzalez notifying her that she had been on medical leave for more than 6 months and if she was not able to return to work on a definite date in the future, her employment would be terminated on October 9, 2023. However, Ms. Gonzalez had previously notified Ms. Collins that she would be released to return to work on September 25, 2023. Ms. Collins also notified Ms. Gonzalez that if she was terminated, she could apply for any open positions with the company in the future.

14. After receiving the letter, Ms. Gonzalez contacted Ms. Collins via telephone on September 18, 2023 and reminded her that she had previously provided the note from her doctor releasing her to return to work on September 25, 2023. Ms. Collins told Ms. Gonzalez that her position was no longer available and that she would have to apply for available positions on the website. Ms. Gonzalez stated that she wanted to be returned to her same or similar position. Pursuant to the instructions of Ms. Collins, Ms. Gonzalez applied for the position of Forklift operator on September 20, 2023, Material Handler on September 21, 2023, and Operator-filler on September 26, 2023. Ms. Gonzalez was notified by Olivia with Coca-Cola that she was scheduled for an interview on September 25 at 3:30 PM for the Material Handler position. However, on September 25th at 3:31 p.m. Olivia canceled the phone interview in a text to Ms. Gonzalez stating that it was "due to unforeseen circumstances" and that "we are therefore no longer able to move

you forward in the recruiting process." Ms. Gonzalez then contacted Olivia to inquire about the reason for the cancellation but did not receive a response.

15.     On September 27, 2023, Ms. Collins called Ms. Gonzalez stating that she had to apply for positions internally and not externally.  After submitting her application internally for a lab tech position on September 27, 2023, Ms. Gonzalez was contacted by one of the recruiters, Ashley, on October 9, 2023 who told Ms. Gonzalez that she was going to speed up the process and talk with HR in Cleveland that day so that she could get her an interview immediately and she would not lose her job. However, Ms. Gonzalez never received a call back from Ashley or HR regarding an interview.  Ms. Gonzalez attempted to contact Ashley on several occasions and left voicemails but received no response. Ms. Gonzalez also tried to contact Ms. Collins but received no response. Ms. Gonzalez's son sent several emails to Ms. Collins inquiring about the status of his mother's application but his emails were also ignored.

16.     On October 9, 2023, Ms. Collins sent a letter to Ms. Gonzalez stating that she had been out of work "since 4/6/23" and was now listed on the Company's records as "an inactive employee on leave."  She further stated, "We hope that your condition is improving and that you will soon be able to return to work and resume performing the essential functions of your most recent position with Company subject, of course, to there being an open position."

17.     On October 12, 2023, Ms. Collins contacted Ms. Gonzalez and stated that with regard to the interview, she was no longer with the Company and would have to apply for the position "externally".   Ms. Collins claimed that Ms. Gonzalez was no longer employed due to "leave exhaustion."  Shortly thereafter, Ms. Gonzalez received a Separation Notice in the mail from Coca-Cola stating that she had been terminated on October 11, 2023 for "Involuntary Separation – Leave Expired."

6

18. Although Ms. Gonzalez had repeatedly notified Ms. Collins of her ability and intent to return to work on September 25, 2023, Ms. Collins refused to allow Ms. Gonzalez to return to work, intentionally ignored her doctor's return to work notices, provided her with confusing and inaccurate information regarding her leave, and willfully interfered with and undermined her efforts to return to work. Not only did Defendant discriminate and retaliate against Ms. Gonzalez based upon her race, national origin, and gender, but Ms. Gonzalez was also denied her rights under the FMLA and Tennessee Disability Act, and suffered a hostile work environment and retaliation as a result of her disability and leave.

19. Ms. Gonzalez has suffered serious mental and emotional harm, humiliation and embarrassment due to the egregious actions of her supervisors and HR. She is also seeking compensation for her back pay, front pay, and loss of benefits. She has been required to incur attorney fees and costs, and seeks liquidated damages under the FMLA and punitive damages under the Tennessee Disability Act.

## IV. FIRST CAUSE OF ACTION: DISCRIMINATION BASED ON RACE, NATIONAL ORIGIN, AND GENDER TENNESSEE HUMAN RIGHTS ACT

20. Ms. Gonzalez re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 19 above.

21. The THRA, 4-21-401(a)(1) states in pertinent part that it is unlawful for an employer to "Fail or refuse to hire or discharge any person or otherwise to discriminate against an individual with respect to compensation, terms, conditions or privileges of employment because of such individual's "race, …sex, …or national origin;..."

7

22. The aforementioned acts of Defendant—including the termination of Ms. Gonzalez's employment—occurred without just cause and were not taken against similarly situated Caucasian and male employees.

23. Ms. Gonzalez was treated differently from other Caucasian and male employees with regard to the pursuit of career advancement within the company as set forth above.

24. Defendant failed to provide adequate training for Ms. Gonzalez to perform the duties of Machine Operator 2 but provided this training to other Caucasian and male employees.

25. Defendant failed to promote Ms. Gonzalez to the position of Machine Operator 2 when less qualified Caucasian and male employees were promoted to the position.

26. Ms. Gonzalez suffered retaliation for seeking advancement within the company, but Defendant supported and encouraged Caucasian and male employees in their efforts to advance their careers.

27. Ms. Gonzalez suffered retaliation for her complaints of discrimination based upon her race, national origin, and gender in violation of T.C.A. 4-21-301(a)(1), including her complaints to the EEOC.

28. Defendant condoned and encouraged the abusive and discriminatory conduct against Ms. Gonzalez based upon her race, national origin, and gender, as set forth above.

29. The aforementioned acts of Defendant, including the termination of Ms. Gonzalez's employment, constitutes unlawful and intentional discrimination against Ms. Gonzalez because of her race, national origin, and gender, in violation of the THRA.

30. Defendant acted with malice and reckless indifference to Ms. Gonzalez's rights under the THRA.

31. As a result of Defendant's discriminatory and retaliatory actions against Ms. Gonzalez, she has been damaged financially and emotionally. In particular, Ms. Gonzalez has lost back pay and front pay, opportunities for advancement, and various employee benefits attendant thereto which she would have earned had Defendant not discriminated and retaliated against her. Ms. Gonzalez has also suffered emotional anguish, mental distress, humiliation and embarrassment, as a result of Defendant's wrongful actions, and has incurred attorney fees to pursue this action.

## V. SECOND CAUSE OF ACTION: HOSTILE WORK ENVIRONMENT BASED ON RACE, NATIONAL ORIGIN, AND GENDER

32. Ms. Gonzalez adopts and re-alleges each and every allegation set forth in paragraphs 1 through 31 of the Complaint as if set forth in full herein.

33. Defendant's aforementioned discriminatory and retaliatory conduct created a hostile work environment for Ms. Gonzalez, and this condition was so pervasive as to alter the conditions of Ms. Gonzalez's employment.

34. Defendant's aforementioned conduct was based on Ms. Gonzalez's race, national origin, and gender.

35. Defendant is vicariously liable for the aforementioned conduct of its supervisors and management personnel.

36. Defendant failed to implement and enforce policies against discrimination in the workplace.

37. Defendant failed to properly train its supervisors and managers with regard to its policies against discrimination in the workplace.

38. As a direct and proximate result of the unlawful and intentional acts of Defendant, Ms. Gonzalez has been damaged financially and emotionally. In particular, Ms. Gonzalez has

9

lost back pay and front pay, opportunities for advancement, and various employee benefits attendant thereto which she would have earned had Defendant not discriminated against her. In addition to the actual and financial losses that Ms. Gonzalez has sustained, she has suffered emotional anguish, mental distress, humiliation and embarrassment because of Defendant's unlawful actions.

## VI. THIRD CAUSE OF ACTION: VIOLATION OF THE FAMILY MEDICAL LEAVE ACT

39. Ms. Gonzalez adopts and realleges each and every allegation set forth in paragraphs 1 through 38 of the Complaint as if set forth in full herein.

40. Defendant is an "employer" as defined by 29 U.S.C § 2611(4), as it employed fifty (50) or more employees for each workday during each of twenty (20) or more calendar weeks.

41. Ms. Gonzalez is an "eligible employee" as defined by 29 U.S.C. § 2611(2) as she had been employed by Defendant for more than 12 consecutive months, and during this time period has worked at least 1,250 hours within the 12-month period immediately preceding her need for leave.

42. Ms. Gonzalez requested and was approved for FMLA leave due to the emotional distress caused by Defendant's discriminatory and retaliatory conduct.

43. When Ms. Gonzalez was released to return to work by her doctor, Defendant's Human Resources Manager refused to allow Ms. Gonzalez to return to work, intentionally ignored her doctor's return to work notices, provided Ms. Gonzalez with confusing and inaccurate information about her job status and position, and willfully interfered with and undermined her efforts to return to work in violation of the FMLA.

44. Plaintiff sought to return to her same or similar position when she was released by her doctor to return to work. Defendant's Human Resource Manager refused to acknowledge

10

Plaintiff's release to return to work. When Plaintiff persisted, the Human Resources Manager notified Plaintiff that her position was no longer available, and she would have to apply for other positions. When Plaintiff applied for other positions, Defendant's Human Resources Manager informed Plaintiff that she could not apply "externally" and had to reapply "internally" for other positions. When Plaintiff reapplied "internally" and was finally able to secure several interviews, the interviews were suddenly canceled at the last minute with no explanation. Plaintiff repeatedly contacted the recruiters and Defendant's Human Resources Manager for an explanation, but her calls were ignored. Finally, on October 9, 2023, Defendant's Human Resource Manager responded stating that Plaintiff's status had been changed to "an inactive employee on leave." With no acknowledgment of Plaintiff's previous notifications of ability to return to work, and contrary to her previous statement that Plaintiff's position was no longer available, the Human Resources Manager stated, "We hope that your condition is improving and that you will soon be able to return to work and resume performing the essential functions of your most recent position with Company subject, of course, to there being an open position." There was also no acknowledgment of or explanation for the cancellation of Plaintiff's interviews. Plaintiff continued to seek an explanation. On October 12, 2024, Defendant's Human Resources Manager contacted Plaintiff and stated that her employment had been terminated because she had exhausted her leave, and as a result, she would have to reapply "externally" for other positions. Several days later, Plaintiff received a Separation Notice in the mail that was dated October 11, 2024, stating the reason for termination as "Involuntary separation – leave expired."

45. Defendant interfered with and denied Ms. Gonzalez her rights under the FMLA in refusing to return Ms. Gonzalez to her same or similar position when she was released to return to work.

46. Defendant retaliated against Ms. Gonzalez for the exercise of her rights under the FMLA as set forth above.

47. As a direct and proximate result of Defendant's wrongful actions, Ms. Gonzalez sustained loss of back pay, front pay, and has incurred attorney fees. In addition, Ms. Gonzalez is entitled to an award of liquidated damages against Defendant.

## VII. FOURTH CAUSE OF ACTION: VIOLATION OF THE TENNESSEE DISABILITY ACT, T.C.A. 8-50-103

48. Ms. Gonzalez adopts and realleges each and every allegation set forth in paragraphs 1 through 47 of the Complaint as if set forth in full herein.

49. Defendant engaged in discriminatory and retaliatory conduct towards Ms. Gonzalez in the workplace based upon her disability as described above in violation of the Tennessee Disability Act.

50. Defendant sabotaged and undermined Ms. Gonzalez's attempts to return to work after being released by her doctor.

51. Defendant's actions created an intimidating, hostile, and offensive working environment for Plaintiff.

52. When Ms. Gonzalez was released to return to work by her doctor, Defendant's Human Resources Manager refused to allow Ms. Gonzalez to return to work, intentionally ignored her doctor's return to work notices, provided Ms. Gonzalez with confusing and inaccurate information about her job status and position, and willfully interfered with and undermined her efforts to return to work in violation of the Tennessee Disability Act.

53.    Plaintiff sought to return to her same or similar position when she was released by her doctor to return to work.  Defendant's Human Resource Manager refused to acknowledge Plaintiff's release to return to work.  When Plaintiff persisted, the Human Resources Manager notified Plaintiff that her position was no longer available, and she would have to apply for other positions.   When Plaintiff applied for other positions, Defendant's Human Resources Manager informed Plaintiff that she could not apply "externally" and had to reapply "internally" for other positions.  When Plaintiff reapplied "internally" and was finally able to secure several interviews, the interviews were suddenly canceled at the last minute with no explanation.  Plaintiff repeatedly contacted the recruiters and Defendant's Human Resources Manager for an explanation, but her calls were ignored.  Finally, on October 9, 2023, Defendant's Human Resource Manager responded stating that Plaintiff's status had been changed to "an inactive employee on leave."  With no acknowledgment of Plaintiff's previous notifications of ability to return to work, and contrary to her previous statement that Plaintiff's position was no longer available, the Human Resources Manager stated, "We hope that your condition is improving and that you will soon be able to return to work and resume performing the essential functions of your most recent position with Company subject, of course, to there being an open position."  There was also no acknowledgment of or explanation for the cancellation of Plaintiff's interviews.  Plaintiff continued to seek an explanation.  On October 12, 2024, Defendant's Human Resources Manager contacted Plaintiff and stated that her employment had been terminated because she had exhausted her leave, and as a result, she would have to reapply "externally" for other positions.  Several days later, Plaintiff received a Separation Notice in the mail that was dated October 11, 2024, stating the reason for termination as "Involuntary separation – leave expired."

54. Defendant interfered with and denied Ms. Gonzalez her rights under the Tennessee Disability Act in refusing to return Ms. Gonzalez to her same or similar position when she was released to return to work.

55. Defendant retaliated against Ms. Gonzalez for the exercise of her rights under the Tennessee Disability Act as set forth above.

56. As a direct and proximate result of Defendant's unlawful conduct, as set forth herein, Ms. Gonzalez has suffered and will suffer loss of back pay, front pay, and employment benefits. Further, Ms. Gonzalez has suffered emotional distress, humiliation, embarrassment, and has incurred attorney fees to pursue this action.

**WHEREFORE, PREMISES CONSIDERED**, Ms. Gonzalez prays:

A. That process be issued and served upon the Defendant requiring it to appear and answer within the time prescribed by law;

B. That upon the hearing of this cause, Ms. Gonzalez be awarded compensatory damages in the amount of $500,000.00;

C. That Ms. Gonzalez be awarded liquidated damages;

D. That Ms. Gonzalez be awarded punitive damages;

E. That Ms. Gonzalez be awarded her reasonable attorney's fees, discretionary costs, and the costs of this action; and

F. That the Ms. Gonzalez be granted such other and further damages and relief as the Court deems proper.

**A TRIAL BY JURY IS HEREBY REQUESTED.**

Respectfully submitted,

**GRACE E. DANIELL, P.C.**

By: /s/ Grace E. Daniell
      Grace E. Daniell, BPR #012045
      Attorney for Plaintiff
      P.O. Box 4307
      Chattanooga, TN 37405
      (423) 266-3179
      gedaniell@gracedaniell.com

15